UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JUANITA MILLER,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:13-cv-763
Beckwith, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 11), the Commissioner's response in opposition (Doc. 16), and plaintiff's reply memorandum (Doc. 18).

**I. Procedural Background**

Plaintiff filed applications for DIB and SSI in February 2011, alleging disability since May 1, 2003, due to rheumatoid arthritis, fibromyalgia, depression, occipital faciitis, and migraine headaches. These applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Gregory G. Kenyon. Plaintiff, plaintiff's daughter, and a vocational expert (VE) testified at the ALJ hearing. On July 24, 2012, the ALJ issued a decision denying plaintiff's DIB and SSI applications. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

II. Analysis

    A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

    1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

    2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

    3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

    4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

    5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the

2

relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] met the insured status requirements of the Social Security Act through December 31, 2011.

2. The [plaintiff] has not engaged in substantial gainful activity since May 1, 2003, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The [plaintiff] has the following severe impairments: fibromyalgia, and rheumatoid arthritis (20 CFR 404.1520(c) and 416.920(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). The [plaintiff] is able to lift 20 pounds occasionally and 10 pounds frequently. She is able to stand for 6 hours and sit for 2 hours out of an 8 hour day. She is subject to the following limitations: 1) occasional crouching, crawling, kneeling, stooping, balancing, and climbing of ramps and stairs; 2) no climbing of ladders, ropes, or scaffolds; 3) no work around hazards such as unprotected heights or dangerous machinery; 4) no concentrated exposure to wet or damp areas; 5) limited to frequent use of the hands for handling and fingering; 6) only occasional overhead reaching.

6. The [plaintiff] is capable of performing her past relevant work as a bookkeeper. This work does not require the performance of work-related activities precluded by the [plaintiff's] residual functional capacity (20 CFR 404.1565 and 416.965).[1]

---

[1] Plaintiff's past relevant work as a bookkeeper was performed at the sedentary level. (Tr. 18).

3

7. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from May 1, 2003, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 13-20).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not

giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

On appeal, plaintiff argues that the ALJ erred by: (1) failing to include an appropriate handling and fingering restriction in the RFC finding; (2) failing to impose additional restrictions in the RFC finding to account for plaintiff's fatigue; (3) misconstruing or ignoring the laboratory evidence; (4) neglecting to give weight to the medical opinion of plaintiff's treating physician, Dr. Elayne Garber, M.D.; and (5) failing to properly assess plaintiff's credibility. (Doc. 11).

**1. Handling and fingering restrictions**

Plaintiff alleges that the ALJ erred by failing to limit plaintiff to no more than occasional handling and fingering. (Doc. 11 at 3-4). Plaintiff asserts the ALJ misrepresented that consultative examining physician Dr. Seung Ha Lim, M.D., reported "good grip strength bilaterally." (Tr. 18, citing Tr. 334-338). Plaintiff alleges that Dr. Lim made no finding to this effect and the objective evidence noted by Dr. Lim establishes the opposite is true. (Doc. 11 at 3). Plaintiff further contends that both she and her daughter provided credible testimony at the ALJ hearing that plaintiff has a hard time with her hands, which would preclude her from using a computer or pen and from performing her past work as a bookkeeper. (*Id.* at 3-4, citing Tr. 40, 44-45). Plaintiff also asserts that the ALJ ignored the record by discussing how plaintiff's handling/fingering ability was limited by her rheumatoid arthritis but failing to discuss similar limitations imposed by her fibromyalgia. (*Id.* at 4). Specifically, plaintiff alleges that the ALJ ignored a July 9, 2008 progress note prepared by treating physician Dr. Meera Atigadda Reddy, M.D., which identifies the likely cause of plaintiff's pain at that time as fibromyalgia. (*Id.*, citing Tr. 269).

5

In response, the Commissioner concedes that Dr. Lim did not report that plaintiff had "good grip strength bilaterally"; however, the Commissioner notes that Dr. Lim did not assess any handling and fingering limitations, and he reported that plaintiff had "no other impairment related limitation" beyond the restrictions noted in his report. (Doc. 16 at 5, citing Tr. 338). The Commissioner further notes that no medical source found that plaintiff was limited in her handling and fingering ability. (*Id*. at 6). Finally, the Commissioner argues that while plaintiff may have had problems using her hands, the evidence does not show that her problems prevented her from performing light work that required only frequent handling and fingering. (*Id*. at 7).

Plaintiff has not shown that the ALJ erred by failing to restrict her to no more than occasional handling and fingering. Dr. Lim tested plaintiff's grip strength using the Jamar Hand Dynamometer and reported the results as part of his consultative examination findings. (Tr. 335-36). Dr. Lim did not assess any handling and fingering limitations. (Tr. 338). He assessed plaintiff as capable of standing/walking about 6 hours in an 8-hours workday with appropriate breaks, sitting about 6 hours in an 8-hour workday with appropriate breaks, and lifting/carrying 20 pounds occasionally and 10 pounds frequently with corresponding pushing/pulling restrictions. (*Id*.). Dr. Lim opined that plaintiff "has no other impairment related physical limitations." (*Id*.). No other examining or treating physician of record imposed handling/fingering restrictions. To the contrary, examining physician Dr. Ashok Kejriwal, M.D., completed a basic medical form dated March 2012 on which he indicated that plaintiff's handling ability was "not significantly limited."[2] (Tr. 362-63). Further, the ALJ acknowledged plaintiff's complaints of some hand pain and swelling and restricted her to frequent handling and fingering based on these complaints. (Tr. 17). Substantial evidence supports the ALJ's finding

---

[2] Plaintiff testified at the ALJ hearing that Dr. Kejriwal examined her one time. (Tr. 42).

that plaintiff is limited to frequent handling and fingering and the ALJ's decision to incorporate this restriction into the RFC finding. Plaintiff's first assignment of error should be overruled.

**2. Assessment of fatigue**

Plaintiff alleges that the ALJ erred by failing to address plaintiff's fatigue in his decision and to "create a limitation" based on fatigue. (Doc. 11 at 4-5). Plaintiff asserts that fatigue is a symptom of two of her impairments - fibromyalgia and Sjögren's syndrome.[3] (*Id.* at 4, citing SSR 12-12p, 2012 WL 3104869; 20 C.F.R. Pt. 404, App. 1 to Subpt. P, Listing 14.10(A)(2)). Plaintiff contends that she complained of fatigue at the hearing (Tr. 34, 35, 36), and her treating physicians reported fatigue. (*Id.* at 5, citing Tr. 268, 312). In response, the Commissioner asserts that the ALJ expressly acknowledged plaintiff's complaints of fatigue. (Doc. 16 at 7, citing Tr. 16, 17). However, the Commissioner alleges that the ALJ did not err by failing to find her fatigue to be disabling because no physician of record indicated that fatigue limited plaintiff to anything more restrictive than light work. (*Id.* at 6).

The Social Security Regulations and Rulings list fatigue as a symptom of fibromyalgia and Sjögren's syndrome. *See* SSR 12-12p, 2012 WL 3104869, at *6 (July 25, 2012) ("Widespread pain and other symptoms associated with [fibromyalgia], such as fatigue, may result in exertional limitations that prevent a person from doing the full range of unskilled work[.]"); 20 C.F.R. Pt. 404, App. 1 to Subpt. P, Listing 14.10(A)(2) (listing "severe fatigue" as one of the constitutional symptoms or signs of Sjögren's syndrome); *Id.*, Listing 14.00D7(a)(ii)

---

[3] The Listings define Sjögren's syndrome as "an immune-mediated disorder of the exocrine glands. Involvement of the lacrimal and salivary glands is the hallmark feature, resulting in symptoms of dry eyes and dry mouth, and possible complications, such as corneal damage, blepharitis (eyelid inflammation), dysphagia (difficulty in swallowing), dental caries, and the inability to speak for extended periods of time. Involvement of the exocrine glands of the upper airways may result in persistent dry cough." 20 C.F.R. Pt. 404, App. 1 to Subpt. P, Listing 14.00D7(a)(i).

7

("Severe fatigue and malaise are frequently reported" with Sjögren's syndrome). Nonetheless, the mere diagnosis of an impairment is not sufficient to establish disability; rather, disability is determined by the functional limitations imposed by a condition. *Higgs v. Bowen,* 880 F.2d 860, 863 (6th Cir. 1988). In particular, "a *diagnosis* of fibromyalgia does not automatically entitle [a claimant] to disability benefits. . . ." *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008) (emphasis in original) (*cf. Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996) ("Some people may have a severe case of fibromyalgia as to be totally disabled from working . . . but most do not and the question is whether [the claimant] is one of the minority.") (citations omitted)).

Plaintiff has not cited any evidence to show that while severe fatigue is a symptom of fibromyalgia and Sjögren's syndrome, she suffers disabling fatigue as a result of these diagnosed impairments. The ALJ acknowledged plaintiff's testimony about her fatigue and plaintiff's report to examining physician Dr. Lim that she experiences fatigue. (Tr. 16, 17). However, the ALJ reasonably decided to discredit plaintiff's complaints of debilitating fatigue.[4] As for the medical evidence, plaintiff cites only two medical records which document her complaints of fatigue. In a treatment note dated July 2008, Dr. Reddy noted that the review of systems was positive for "malaise/fatigue." (Tr. 268). In a treatment note dated over two years later in October 2010, Dr. Garber reported that plaintiff was "very <u>fatigued</u>." (Tr. 312) (emphasis in original). These two isolated treatment notes generated over a nine-year period of alleged disability are insufficient to establish that plaintiff suffers from debilitating fatigue. In any event, plaintiff has not carried her burden to demonstrate how the ALJ would have altered the RFC finding had he properly considered evidence of fatigue. *See Dickey-Williams v. Comm'r of Soc.*

---

[4] The ALJ's reasons for discounting plaintiff's credibility are discussed more fully in connection with plaintiff's fifth assignment of error.

8

*Sec.*, 975 F. Supp.2d 792, 807-08 (E.D. Mich. 2013) (holding the plaintiff did not show the ALJ erred by failing to specifically discuss her migraines when formulating the RFC finding; substantial evidence supported the ALJ's finding and plaintiff did not demonstrate how the ALJ would have altered the RFC finding based on evidence of migraines).

Thus, the ALJ did not err by failing to include additional restrictions in the RFC finding to account for plaintiff's complaints of debilitating fatigue. Plaintiff's second assignment of error should be overruled.

### 3. Interpretation of laboratory test results

Plaintiff alleges that the ALJ erred by misstating or ignoring the results of laboratory tests which purportedly showed "significant abnormalities." (Doc. 11 at 5). Plaintiff notes that the ALJ stated that a laboratory report from Advanced Medical Analysis dated October 24, 2009, showed "no significant abnormalities." (*Id.*, citing Tr. 16; Tr. 293-304). Plaintiff contends that the test results showed "significant abnormalities in the CRP," which was indicative of inflammation, and in the "rheumatoid factor." (Doc. 11 at 5). Plaintiff further contends that the ALJ erred by ignoring a laboratory report from Cedars-Sinai Medical Center dated July 8, 2010, which purportedly showed an extremely abnormal sedimentation rate. (*Id.*; Tr. 322-25).

In response, the Commissioner acknowledges that some of plaintiff's laboratory test results may have been abnormal. (Doc. 16 at 8). However, the Commissioner alleges that plaintiff's physicians presumably had access to these test results; none of her physicians indicated that plaintiff was disabled; and it was reasonable for the ALJ to conclude that the laboratory records did not contain evidence of "significant abnormalities." (*Id.*).

Plaintiff asserts in reply that there is no basis for assuming her physicians had her abnormal laboratory test results or reviewed them. (Doc. 18 at 2). She contends that if the ALJ

9

was unable to evaluate the results without having a physician review them, then the ALJ failed to fulfill his duty to develop the record by not ordering such a review. (*Id.*, citing 20 C.F.R. § 404.1512(d-e).[5]

Initially, the Court finds that plaintiff has waived her argument that the ALJ violated his duty to develop the record under 20 C.F.R. § 404.1512(d-e). Plaintiff failed to develop this argument legally or factually, and it is not the Court's obligation to flesh out her argument for her. *See Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir. 2006) ("It is well-established that 'issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'") (citing *United States v. Layne,* 192 F.3d 556, 566 (6th Cir. 1999) (quoting *McPherson v. Kelsey,* 125 F.3d 989, 995-96 (6th Cir. 1997)); *Brindley v. McCullen,* 61 F.3d 507, 509 (6th Cir. 1995) ("We consider issues not fully developed and argued to be waived.")).

As to the merits of plaintiff's claim that the ALJ erred by misstating or ignoring "significantly abnormal" laboratory test results, both plaintiff and the Commissioner apparently agree that the record does not include medical interpretations of the results in question. Thus, plaintiff's allegation that the results showed "significant abnormalities" finds no support in the record. (Doc. 11 at 5). Neither does the ALJ's conclusion that the test results indicated "no significant abnormalities." (Tr. 16). However, plaintiff has not alleged how any factual error committed by the ALJ in this regard resulted in a decision that was not supported by substantial evidence. The abnormal blood test results in and of themselves do not translate into discrete functional limitations and no physician has interpreted these results as doing so. Plaintiff has not

---

[5] This regulation states that before a determination that a claimant is not disabled is made, the Agency will "develop [the claimant's] complete medical history for at least the 12 months preceding the month in which" the application is filed and may ask the claimant to attend one or more consultative evaluations at the Agency's expense. 20 C.F.R. § 404.1512(d-e).

shown how the ALJ should have altered the RFC finding based on a different interpretation of the test results.

For these reasons, plaintiff's third assignment of error should be overruled.

### 4. Weight to the treating physician's treatment notes and opinions

Plaintiff alleges that the ALJ erred by neglecting to give weight to the "medical evidence and opinions" of her treating physician, Dr. Garber. (Doc. 11 at 5-6, citing Tr. 306-15). Plaintiff specifically contends that the ALJ erred by failing to evaluate Dr. Garber's "opinions" that plaintiff's fibromyalgia was not controlled and she suffered from severe fatigue. (*Id*. at 6). The Commissioner contends that Dr. Garber did not issue any "opinion" on plaintiff's functional limitations which the ALJ was required to weigh. (Doc. 16 at 8-9).

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6) in determining what weight to give the opinion. *See Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544. "Importantly, the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given a] treating source's opinion.'" *Cole*, 661 F.3d at 937 (citing former 20 C.F.R. § 404.1527(d)(2)).[6] *See also Wilson*, 378 F.3d at 544

---

[6] Title 20 C.F.R. §§ 404.1527, 416.927 were amended effective March 26, 2012. The provisions governing the weight to be afforded a medical opinion that were previously found at §§ 404.1527(d) and 416.927(d) are now found at §§ 404.1527(c), 416.927(c).

11

(ALJ must give "good reasons" for the ultimate weight afforded the treating physician opinion). Treatment records containing a physician's observations do not qualify as "medical opinions" under the Social Security regulations and "without more, are not the type of information from a treating physician which will be provided great weight. . . ." *Bass v. McMahon*, 499 F.3d 506, 510 (6th Cir. 2007). When a treating physician makes "no medical judgments, the ALJ ha[s] no duty to give [the physician's] observations controlling weight or provide good reasons for not doing so." *Id.*

The ALJ did not violate the treating physician rule by failing to weigh an "opinion" by Dr. Garber. Dr. Garber prepared treatment notes but did not render a medical opinion on plaintiff's functional capacity. To the extent plaintiff contends that the treatment records generated by Dr. Garber document the severity and symptoms of her fibromyalgia, such records do not qualify as "medical opinions" under the Social Security regulations. *Bass*, 499 F.3d at 510. In fact, Dr. Garber's treatment record referencing extreme fatigue appears to repeat plaintiff's subjective report of her symptoms, and as such does not constitute objective medical evidence. *Id.* (citing *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990) (a doctor's report that merely repeats a patient's assertions about her pain level and ability to sleep, stand, and walk is not objective medical evidence); 20 C.F.R. § 404.1529 ("By objective medical evidence, we mean medical signs and laboratory findings as defined in § 404.1528(b) and (c))"; *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007)).

Thus, because the record does not include Dr. Garber's medical opinion, the ALJ did not err by failing to weigh Dr. Garber's opinion pursuant to the treating physician rule. Plaintiff's fourth assignment of error should be overruled.

### 5. The ALJ's credibility assessment

Plaintiff alleges that the ALJ erred in assessing her credibility. Plaintiff acknowledges that the ALJ provided several reasons for discounting her credibility. (Doc. 11 at 6). She nonetheless argues the ALJ erred by: (1) stating that testing repeatedly showed a greater capacity for movement and activity than plaintiff alleged without citing a specific test or allegation in support of his finding; (2) concluding without any supporting evidence that plaintiff did not avail herself of the opportunity to improve her condition through prescribed diet or exercise; and (3) providing no reasons to doubt the testimony provided by plaintiff's daughter at the ALJ hearing. (*Id*. at 6-8). The Commissioner alleges that the ALJ considered the testimony of plaintiff's daughter and properly discounted plaintiff's credibility based on a number of material factors. (Doc. 16 at 9-12).

Title 20 C.F.R. §§ 404.1529, 416.929 and Social Security Ruling 96-7p describe a two-part process for assessing the credibility of an individual's statements about symptoms, including pain. First, the ALJ must determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged; second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical evidence and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 96-7p, 1996 WL 374186 (July 2,

1996). "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility. Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (citing *Villarreal v. Sec'y of Health and Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987)).

Upon review of the ALJ's complete credibility determination, the Court finds the ALJ's determination is substantially supported by the evidence of record and is entitled to deference. In determining that plaintiff's subjective complaints of disabling pain and other symptoms were not fully credible, the ALJ relied on a number of factors including plaintiff's sparse treatment history; the lack of supporting objective findings; the relatively mild nature of her rheumatoid arthritis symptoms; and plaintiff's failure to take advantage of prescribed diet and exercise plans. (Tr. 17, citing Tr. 253-92, 293-304, 305-25, 334-38). The ALJ's findings are substantially supported by the record. The record shows that plaintiff sought treatment for her allegedly disabling impairments infrequently. There are no medical records for the first four years of alleged disability beginning in May 2003, and there are only infrequent treatment records for the period October 2007 to the date of the ALJ hearing in July 2012. (Tr. 253-325). The infrequent nature of plaintiff's treatment is inconsistent with her claim of disabling impairments. *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004) ("In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment. A failure to do so may cast doubt on a claimant's assertions of disabling pain."). Further, although the ALJ acknowledged that plaintiff experienced pain, swelling and stiffness (Tr. 17, citing Tr. 275, 278, 316), clinical and objective findings which document the debilitating nature of these symptoms are absent from the record. *See Walters*, 127

14

F.3d at 531 (ALJ's finding discounting plaintiff's credibility was substantially supported where the medical records contained very little objective, physical, or clinical evidence of symptoms of disabling severity, and there was no medical evidence suggesting that the claimant's medical conditions could reasonably be expected to produce the alleged disabling pain); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) (a claimant's testimony is properly discounted if it is contradicted by the medical reports.)

In addition, the ALJ did not err by considering plaintiff's apparent failure to follow diet and exercise plans that were provided to her to improve her condition. (Tr. 17). Plaintiff cites a Ninth Circuit case for the proposition that the failure to follow prescribed treatment for obesity says little, if anything, about a claimant's credibility. (Doc. 11 at 7, citing *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007)). The Court in *Orn* recognized, however, that "[i]n the case of a complaint of pain, such failure [to follow prescribed treatment] may be probative of credibility, because a person's normal reaction is to seek relief from pain. . . ." *Id.* at 638. A claimant's statements may be deemed less credible "if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." SSR 96-7P, 1996 WL 374186, at *7. Here, plaintiff was encouraged to exercise in October 2007 to improve symptoms of fibromyalgia. (Tr. 288). In June 2008, she was provided dietary guidelines to deal with symptoms of fibromyalgia and rheumatoid arthritis, with exercise to be incorporated into her routine as soon as her pain decreased. (Tr. 272). Plaintiff testified at the ALJ hearing in July 2012 that she was hoping to begin physical therapy or some type of exercise, but she was not currently exercising. (Tr. 37). Plaintiff did not explain why she was not following the exercise guidelines provided by her treating physician. Nor does plaintiff point to any evidence which indicates that she attempted to follow the dietary guidelines provided by

15

her treating physician to help her deal with her symptoms of fibromyalgia and rheumatoid arthritis.

Further, the ALJ did not ignore testimony provided by plaintiff's daughter. The ALJ noted that plaintiff's daughter testified that plaintiff lies down most of the time; she drives plaintiff most of the places she needs to go; she helps plaintiff with the household chores and does most of the lifting; and although she and plaintiff used to go out together to the mall, movies or restaurants, now plaintiff's daughter just sits with her when they want to spend time together so that plaintiff can lie down when necessary. (Tr. 17). However, the ALJ was not required to credit this testimony. The assessment of the credibility of lay witnesses, as well as the weight to attribute their testimony, is peculiarly within the judgment of the ALJ. The testimony of a lay witness "must be given 'perceptible weight' [only] where it is supported by medical evidence." *Allison v. Comm'r of Social Sec.*, No. 96-3261, 1997 WL 103369, at *3 (6th Cir. March 6, 1997) (citing *Lashley v. Sec'y of HHS*, 708 F.2d 1048, 1054 (6th Cir. 1983) ("Perceptible weight must be given to lay testimony where . . . it is fully supported by the reports of the treating physicians.")). *See also Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004). There are no treating physician reports or treatment notes which fully support the testimony provided by plaintiff's daughter. To the contrary, the medical evidence appears to be inconsistent with her testimony in at least one material respect. Plaintiff asserts that her daughter testified that plaintiff's "hands were so weak that she could not even hold a pen." (Doc. 11 at 8). However, Dr. Kejriwal assessed plaintiff's handling as "not significantly limited" (Tr. 363), and no other examining or treating physician referenced handling or fingering restrictions. Thus, the ALJ did not err by failing to credit the allegations of plaintiff's daughter.

16

Finally, the ALJ did not ignore plaintiff's subjective complaints. Instead, the ALJ partially credited plaintiff's testimony by restricting her to frequent handling and fingering in deference to her subjective complaints of hand pain and by including a prohibition against concentrated exposure to wet or damp weather in the RFC finding. (Tr. 17).

Thus, plaintiff has not shown that the ALJ committed any error in connection with his thorough assessment of plaintiff's credibility. The ALJ evaluated the relevant factors and evidence of record, and his credibility finding is supported by substantial evidence. The ALJ's credibility finding is therefore entitled to deference. *Walters*, 127 F.3d at 531 (citing *Villarreal*, 818 F.2d at 463). Plaintiff's fifth assignment of error should be overruled.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **AFFIRMED** and this matter be **CLOSED** on the docket of the Court.

Date: 10/29/14

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JUANITA MILLER,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:13-cv-763
Beckwith, J.
Litkovitz, M.J.

# NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).