**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Juanita Miller,            )
                           )
    Plaintiff,         ) Case No. 1:13-CV-763
                           )
  vs.                      )
                           )
Commissioner of Social Security, )
                           )
    Defendant.         )

O R D E R

This matter is before the Court on Magistrate Judge Litkovitz's Report and Recommendation of October 29, 2014 (Doc. No. 19) and Plaintiff Juanita Miller's objections to the Report and Recommendation. Doc. No. 20.  In her Report and Recommendation, Judge Litkovitz concluded that the Administrative Law Judge's ("ALJ") determination that Plaintiff is not disabled under the Social Security regulations because she has the residual functional capacity to perform her past relevant work as a bookkeeper was supported by substantial evidence.  Judge Litkovitz, therefore, recommended that the ALJ's decision be affirmed and this case be closed on the docket of the Court.  In her objections, Plaintiff takes issue with several of the Judge Litkovitz's conclusions, including her finding that the ALJ's residual functional capacity assessment, as well has his credibility determinations, were supported by substantial evidence.  For the reasons that follow, Plaintiff's objections to the Report and Recommendation are not well-taken and are **OVERRULED.**  The Court **ADOPTS** the Report and Recommendation.  The ALJ's decision finding that Plaintiff is not disabled under the Social Security regulations is **AFFIRMED.**

I. Background

Plaintiff Juanita Miller filed a claim for disability insurance benefits and supplemental security income based on, inter alia, the impairments of fibromyalgia and rheumatoid arthritis. Plaintiff claimed an onset date of disability of May 1, 2003; the administrative record, however, only contains medical records from 2007 to 2011. Plaintiff's past relevant work was as a bookkeeper.

The Social Security Administration denied Plaintiff's claims initially and upon reconsideration.  She requested and received an evidentiary hearing before an ALJ, which took place in May 2012.  The ALJ subsequently issued a decision finding that Plaintiff is not disabled under the Social Security regulations because she has the residual functional capacity ("RFC") to perform her past job as a bookkeeper.  In reaching this conclusion, the ALJ found that Plaintiff has the physical residual capacity to perform a limited range of work at the light level of exertion. According to the ALJ's decision, Plaintiff's physical restrictions included performing handling and fingering on only a frequent basis as well as other restrictions, not relevant here, on crouching, climbing, and working around unprotected heights and dangerous machinery. Tr. 15. The ALJ determined that Plaintiff does not have any restrictions related to a severe mental impairment.  Tr. 14-15.  With this RFC and in reliance on the testimony of the vocational expert, the ALJ found that Plaintiff can perform her past job as a bookkeeper, which was performed at the sedentary level and required only frequent handling and fingering. Tr. 18. The vocational expert testified that if Plaintiff can only perform handling and fingering on an occasional basis, she would not be able to perform her past relevant work.  Tr. 50-51.

In arriving at this RFC, the ALJ gave "less weight" to the opinion of Dr. Kejriwal on the grounds that it was internally inconsistent. In March 2012, Dr. Kejriwal completed a Basic Medical questionnaire opining on Plaintiff's physical restrictions.[1] Dr. Kejriwal noted diagnoses of rheumatoid arthritis, occipital and migraine headaches, fibromyalgia (poor, but stable), and Sjogren's Syndrome.[2] Dr. Kejriwal indicated that Plaintiff can sit, stand, and walk only two hours per day and for only 30 minutes without interruption. Dr. Kejriwal then indicated that Plaintiff can lift and carry up to 20 pounds both occasionally and frequently. Finally, Dr. Kejriwal indicated that Plaintiff is moderately limited her abilities to push/pull and bend, but that she was not significantly limited in reaching, handling, repetitive movements, seeing, hearing, and speaking. Tr. 363. The ALJ found that Dr. Kejriwal's sitting, standing, and walking limitations were inconsistent with the other moderate limitations he indicated. Tr. 16, 19.

On the other hand, the ALJ gave "great weight" to the opinion of Dr. Lim, a state agency examining physician, issued in May 2011. As is relevant here, Dr. Lim's examination notes show the following. Using a Dynamometer, Plaintiff generated grip

---

[1] The record is not clear whether Dr. Kejriwal was a state agency examining physician, a state agency consulting physician or whether Plaintiff saw him in conjunction with a claim for state disability benefits. It does not appear, however, that Kejriwal was Plaintiff's treating physician. In one section, Dr. Kejriwal wrote "to FU ć PCP" - in other words, to follow-up with primary care physician - indicating that he issued his report pursuant to some form of consultative examination. Tr. 362. In any event, Plaintiff does not contend that Dr. Kejriwal was a treating physician.

[2] Sjogren's Snydrome is an autoimmune disease characterized by dry eyes and a dry mouth. It often accompanies other autoimmune disorders such as rheumatoid arthritis and lupus. See Sjogren's Syndrome, available at http://www. mayoclinic.org/ diseases-conditions/sjogrens-syndrome/basics/definition/con-20020275 (visited January 15, 2015).

strength of 45 pounds of force with the right hand and 30 pounds of force with the left hand. Plaintiff had a normal gait and balance. Plaintiff had normal range of motion with her neck but with some pain. She had normal range of motion with her back but multiple tender points on palpitation. Plaintiff had normal range of motion with the upper and lower extremities. Dr. Lim stated that Plaintiff had "[n]ormal muscle bulk without atrophy. Strength: Handgrip is as noted above. Otherwise strength is 5/5 throughout without focal motor deficits." Tr. 336-37. Dr. Lim confirmed the diagnosis of fibromyalgia as indicated by multiple tender points on palpitation. Dr. Lim concluded that Plaintiff:

> is restricted to standing and/or walking about 6 hours in an eight-hour workday with appropriate breaks. The patient would be able to sit for 6 hours in an eight-hour day with appropriate breaks. The patient would be able to lift and/or carry 20 pounds occasionally and 10 pounds frequently. Pushing and pulling is unlimited other than as shown for lifting and/or carrying. <u>The patient has no other impairment related physical limitations</u>.

Tr. 338 (emphasis added).

The record also contains office notes from Plaintiff's treating physician, Dr. Reddy. Tr. 264-292. Plaintiff consistently reported experiencing pain in her hands, wrists and ankles despite having normal range of motion throughout her arms, legs, and torso. Plaintiff also reported experiencing fatigue. Dr. Reddy's notes indicate fibromyalgia, rather than rheumatoid arthritis, as the source of Plaintiff's pain. Plaintiff was given dietary guidelines as part of her treatment program to help alleviate the symptoms caused by fibromyalgia and rheumatoid arthritis. Dr. Reddy's treatment notes, however, do not offer or contain any opinions on the effect of these diseases on Plaintiff's functionality.

During the evidentiary hearing, Plaintiff described a lifestyle with little or no activity. Plaintiff lives with her aunt, who does most of the household chores. Plaintiff alternates

between sitting and laying down. She estimates she needs to lay down four to six times per day for up to two hours at a time. Plaintiff does not read or socialize or engage in any hobbies. Plaintiff does not do any cooking except to make instant coffee. She said that she can only sit for about 30 minutes to an hour at a time. Plaintiff testified that she really cannot really lift anything heavier than a newspaper without "pay[ing] the price for it the next day[.]" Plaintiff can attend to her personal needs, such as showering, but has difficulty with buttons. Plaintiff's daughter testified to the same effect, adding that Plaintiff has difficulty writing because it hurts her to hold a pen. Tr. 34-45.

As indicated, the ALJ gave great weight to Dr. Lim's opinion in establishing Plaintiff's RFC. In developing Plaintiff's RFC, the ALJ also discounted her subjective complaints concerning the severity of her symptoms and rejected her contention that she is unable to work at all. The ALJ proffered several reasons for this determination. First, the ALJ noted that there are no medical records for the first four years after the alleged onset date of disability. Second, Plaintiff's once-a-year office visits were inconsistent with her claimed level of incapacity. Third, test results showed a greater capacity for movement than alleged by Plaintiff. In that regard, the ALJ noted normal range of motion tests and that her "sed rate, uric acid levels, and ANA have all been negative." The ALJ accounted for complaints of hand pain and swelling by limiting Plaintiff to frequent handling and fingering and no exposure to wetness and dampness. Fourth, the ALJ found that Plaintiff did not avail herself of opportunities to improve her condition through diet and exercise regimens that had been prescribed. Fifth, and finally, the ALJ noted that Plaintiff had significant post-onset earnings, which was indicative of significant retained vocational capabilities. Tr. 17.

Because the ALJ determined that Plaintiff has the RFC to perform her past relevant work as a bookkeeper, he concluded that she is not disabled under the Social Security regulations. The ALJ made an alternative finding that Plaintiff has the RFC to perform other jobs that exist in significant numbers in the national economy, such as cleaner, folder/stacker, and inspector, and that she is not disabled under the Social Security regulations for this reason as well. Tr. 18-20.

The Appeals Council denied Plaintiff's request to review the ALJ's decision, making it the final decision of the Commissioner of Social Security. Plaintiff filed a timely complaint for judicial review of the ALJ's decision. Plaintiff raised five assignments of error.

First, Plaintiff alleged that the ALJ erred by finding she can perform more than just occasional fingering and handling. In this regard, she noted that the hand dynamometer tests indicate that her grip strength is far below normal for a woman of her age. She also noted testimony from the evidentiary hearing indicating she has trouble using her hands.

Second, Plaintiff alleged that the ALJ erred in failing to address her fatigue or to create a limitation based on her fatigue.

Third, Plaintiff alleged that the ALJ misinterpreted the results of laboratory tests. Specifically, Plaintiff argued that the ALJ erred in stating that her test results were normal when in fact they supported her complaints of rheumatoid arthritis.

Fourth, Plaintiff argued that the ALJ erred by not giving weight to Dr. Garber's medical evidence and opinions. Plaintiff pointed out that Dr. Garber's treatment notes, Tr. 306-315, indicate that her fibromyalgia is not controlled and that she suffers from fatigue.

Fifth, and finally, Plaintiff argued that the ALJ erred in evaluating her credibility and her daughter's credibility.

Judge Litkovitz's report rejected each of Plaintiff's assignments of error.

First, Judge Litkovitz found that the ALJ's fingering and handling limitations were supported by substantial evidence. Judge Litkovitz noted that despite the hand dynamometer results, Dr. Lim did not impose any specific handling or fingering limitations. Judge Litkovitz also observed that no other medical source imposed handling or fingering limitations and that even Dr. Kejriwal indicated that Plaintiff's handling ability was not significantly limited. Judge Litkovitz also noted that the ALJ limited Plaintiff to frequent handling and fingering based on her subjective complaints of hand pain and swelling.

Second, Judge Litkovitz concluded that the ALJ's determination not to impose any limitations related to Plaintiff's fatigue was supported by substantial evidence, in particular his adverse credibility determination and the isolated treatment notes documenting complaints of fatigue.

Third, Judge Litkovitz essentially concluded that the ALJ's alleged error in interpreting laboratory results was harmless since the results themselves do not translate into discrete functional limitations and no physician has interpreted them as resulting in any limitations.

Fourth, Judge Litkovitz found that Dr. Garber's treatment notes do not contain any opinion on Plaintiff's functionality. Therefore, Judge Litkovitz concluded, the ALJ did not err in failing to weigh Dr. Garber's opinion.

Fifth, and finally, Judge Litkovitz found that the ALJ's credibility assessments were supported by substantial evidence. Judge Litkovitz concluded that the ALJ proffered legitimate reasons for discounting Plaintiff's credibility. Judge Litkovitz also concluded that the ALJ had sufficient reason to discount Plaintiff's daughter's testimony, in particular, that

her testimony concerning Plaintiff's fingering difficulties was contradicted by Dr. Kejriwal's opinion.

Accordingly, Judge Litkovitz recommended affirming the ALJ's decision and closing this case on the Court's docket.

Plaintiff filed timely objections to Judge Litkovitz's Report and Recommendation which are now ready for disposition.

## II. Standard of Review

The relevant statute provides the standard of review to be applied by this Court in reviewing decisions by the ALJ. See 42 U.S.C. § 405(g). The Court is to determine only whether the record as a whole contains substantial evidence to support the ALJ's decision. "Substantial evidence means more than a mere scintilla of evidence, such evidence as a reasonable mind might accept as adequate to support a conclusion." LeMaster v. Secretary of Health & Human Serv., 802 F.2d 839, 840 (6th Cir. 1986) (internal citation omitted). The evidence must do more than create a suspicion of the existence of the fact to be established. Id. Rather, the evidence must be enough to withstand, if it were a trial to a jury, a motion for a directed verdict when the conclusion sought to be drawn from it is one of fact for the jury. Id. If the ALJ's decision is supported by substantial evidence, the Court must affirm that decision even if it would have arrived at a different conclusion based on the same evidence. Elkins v. Secretary of Health & Human Serv., 658 F.2d 437, 439 (6th Cir. 1981). The district court reviews de novo a magistrate judge's report and recommendation regarding social security benefits claims. Ivy v. Secretary of Health & Human Serv., 976 F.2d 288, 289-90 (6th Cir. 1992).

III. <u>Analysis</u>

A. <u>Handling and Fingering Limitations</u>

Plaintiff first objects to Magistrate Judge Litkovitz's conclusion that the ALJ's handling and fingering limitations were supported by substantial evidence. Plaintiff argues that Dr. Lim's report, to which the ALJ assigned great weight, was internally inconsistent in that he did not indicate any handling or fingering restrictions despite the hand dynamometer results demonstrating that she has substantially weakened grip strength. As stated above, Dr. Lim indicated that, except for the exertional limitations he noted, Plaintiff has no impairment-related restrictions. Plaintiff contends that Dr. Lim's contradictory report does not stand up to the evidence of hand pain she reported to Dr. Reddy or the testimony from her and her daughter concerning the difficulty she has with her hands and fingers. The Court concurs with Judge Litkovitz's resolution of this assignment of error.

Even if the Court were to conclude that Dr. Lim's report is internally inconsistent for the reason stated by Plaintiff, as Judge Litkovitz noted in her report, it remains that there is no medical source with an opinion indicating that Plaintiff has any limitations on handling and fingering. Dr. Kejriwal, whose report best supported Plaintiff's disability claim, also indicated that she does not have any significant handling limitations. In fact, Dr. Lim and Dr. Kejriwal are the only doctors who provided opinions as to Plaintiff's functionality. In other words, there are no medical opinions contradicting their reports and they are essentially consistent with each other concerning Plaintiff's ability to handle and finger. The ALJ, nevertheless, accommodated Plaintiff's difficulties with her hands by limiting her to frequent handling and fingering. The Court cannot say, based on this record, that the ALJ's

9

findings on Plaintiff's handling and fingering limitations were not supported by substantial evidence.

Accordingly, this objection is not well-taken and is **OVERRULED.**

### B. Fatigue

Plaintiff next objects to Magistrate Judge Litkovitz's finding that the ALJ's decision not to add limitations related to fatigue was supported by substantial evidence. Judge Litkovitz found that the medical records do not support a finding that she suffers from a disabling level of fatigue. In her objections, Plaintiff again points to two office treatment notes in which she complained about or the doctor noted fatigue in support of her contention that the ALJ should have accounted for fatigue in his RFC. The Court concludes that the ALJ's decision not to include a limitation based on fatigue was supported by substantial evidence.

The medical evidence does not support a finding that Plaintiff suffers from disabling fatigue. As the ALJ noted, there are no medical records at all to cover the first four years of the claimed period of disability and Plaintiff's relatively infrequent office visits cut against a finding that her fatigue is disabling. E.g., Moon v. Sullivan, 923 F.2d 1175, 1182 (6th Cir. 1990) (plaintiff's claim of disabling depression and obsessive-compulsive disorder contradicted by the fact that he only sporadically sought psychiatric treatment).

This objection is not well-taken and is **OVERRULED.**

### C. The Laboratory Evidence

Plaintiff next objects to Magistrate Judge Litkovitz's basic conclusion that the ALJ's misinterpretation of the results of laboratory tests was harmless. As indicated above, the

10

ALJ commented that Plaintiff's "sed rate, uric acid levels, and ANA have all been negative" when in fact they were indicative of rheumatoid arthritis. The Court agrees with Judge Litkovitz's resolution of this assignment of error.

The ALJ actually concluded that Plaintiff has rheumatoid arthritis and that it is a severe impairment. Therefore, it does not appear that the ALJ was substantially misled by his erroneous interpretation of the lab tests. Moreover, as Judge Litkovitz correctly observed, the test results themselves were not translated into any functional limitations. Finally, even Plaintiff's treating physician, Dr. Reddy, noted that her rheumatoid arthritis was only "mildly active," Tr. 278, and wrote that her pain was most likely due to fibromyalgia instead of rheumatoid arthritis. Tr. 267.

The record does not suggest that Plaintiff's rheumatoid arthritis is particularly severe and there are no medical opinions indicating that it results, in and of itself, in any functional limitations. The Court concludes, therefore, that the ALJ's misinterpretation of the laboratory results was harmless.

Accordingly, this objection is not well-taken and is **OVERRULED.**

### D. Dr. Garber

Plaintiff next objects to Magistrate Judge Litkovitz's rejection of her contention that the ALJ erred by not assigning any weight to Dr. Garber's opinions. As noted, Judge Litkovitz found that Dr. Garber's treatment notes do not contain any opinions about Plaintiff's functionality. Plaintiff contends that Dr. Garber opined that her fibromyalgia is not controlled and that she suffers from severe fatigue. Judge Litkovitz correctly resolved this assignment of error.

A diagnosis of an impairment does not establish disability under the Social Security regulations. Howard v. Commissioner of Social Sec., 276 F.3d 235, 240 (6th Cir. 2002)("[T]he RFC is meant to describe the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from-though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities."). Dr. Garber's statements that Plaintiff's fibromyalgia is uncontrolled and that she experiences severe fatigue are not opinions concerning her functional capacity. The ALJ did determine, though, that Plaintiff has fibromyalgia and that it is a severe impairment. This aspect of his decision, therefore, is consistent with Dr. Garber's treatment notes. As already discussed, however, the ALJ's determination not to include a limitation based on fatigue is supported by the record.

This objection is not well-taken and is **OVERRULED.**

### E. Credibility Determinations

Finally, Plaintiff objects to Magistrate Judge Litkovitz's conclusion that the ALJ's credibility determinations were supported by substantial evidence. Plaintiff argues that the reasons the ALJ cited for discounting her credibility are not supported by the record. To recap, the ALJ listed the following reasons: 1) the absence of treatment notes for the first four years after the claimed onset of disability; 2) Plaintiff's relatively infrequent office visits were inconsistent with the claimed level of disability; 3) test results showing greater capacity for movement and activity than alleged; 4) failure to follow treatment recommendations; and 5) significant post-onset earnings.

Of these reasons, Plaintiff contends that there is no evidence in the record that she failed to comply with treatment recommendations. She contends that the ALJ erred in construing the absence of a record positively showing compliance as indicating her failure

to comply with a treatment recommendation. She also complains that the ALJ failed to cite any tests which show she has a greater capacity for movement and activity than she claims. Plaintiff did not address the remaining reasons cited by the ALJ.

The ALJ's credibility findings are entitled to substantial deference by the reviewing court. Barker v. Shalala, 40 F.3d 789, 795 (6th Cir.1994). The Court has already indicated that a claimant's sporadic treatment visits cut against a finding of disability. See, supra at 10. Thus, Plaintiff's failure to provide any medical evidence concerning the first four years of her claimed period of disability coupled with her infrequent treatment visits thereafter support the ALJ's determination that Plaintiff is not as limited as she claims. Additionally, the ALJ may consider the claimant's post-onset work activity to evaluate her credibility. Miller v. Commissioner of Social Sec., 524 Fed. Appx. 191, 194 (6th Cir. 2013); Pizzo v. Commissioner of Social Sec., No. 13–CV–11344, 2014 WL 1030845, at *10 (E.D.Mich. Mar. 14, 2014); Ramos v. Astrue, No. 09 CV 3030, 2010 WL 3325205, at *8 (E.D.N.Y. Aug. 19, 2010).

The Court recognizes that objective test results have little or no value in assessing disability based on fibromyalgia. Rogers v. Commissioner of Social Sec., 486 F.3d 234, 248 (6th Cir. 2007). The ALJ, therefore, arguably erred in relying on normal range of motion tests to discount Plaintiff's credibility. The same could also be said for the ALJ's reliance on the absence of evidence indicating Plaintiff's compliance with treatment options as proof of non-compliance. See SSR 96-7p (indicating that the claimant should be given an opportunity to explain her failure to pursue treatment options).[3] Nevertheless, the ALJ

---

[3] On the other hand, the record arguably affirmatively supports a finding that Plaintiff failed to comply with treatment options. As Judge Litkovitz pointed out in her

had other valid bases for discounting Plaintiff's credibility which she does not contest.  The Court concludes, therefore, that the ALJ's adverse credibility determination was supported by substantial evidence.  Johnson v. Commissioner of Social Sec., 535 Fed. Appx. 498, 507 (6th Cir. 2013) ("[E]ven if an ALJ's adverse credibility determination is based partially on invalid reasons, harmless error analysis applies to the determination, and the ALJ's decision will be upheld as long as substantial evidence remains to support it.").

Finally, substantial evidence supported the ALJ's credibility determination as to Plaintiff's daughter for substantially the same reasons.  Additionally, as Judge Litkovitz pointed out, Plaintiff's daughter's testimony that Plaintiff has difficulty holding a pen was inconsistent with Dr. Kejriwal's finding that Plaintiff does not have any significant handling restrictions.

Accordingly, this objection is not well-taken and is **OVERRULED.**

---

report, Plaintiff was given exercise guidelines to help with her fibromyalgia and testified during the hearing that she hoped begin exercising soon, but did not explain why she had not been following the exercise guidelines up to then.  Doc. No. 19, at 15-16.

<u>Conclusion</u>

In conclusion, Plaintiff's objections to Magistrate Judge Litkovitz's Report and Recommendation are not well-taken and are **OVERRULED.** The Court **ADOPTS** the Report and Recommendation. The decision of the ALJ denying Plaintiff's claim for disability insurance benefits and supplemental security income is **AFFIRMED. THIS CASE IS CLOSED.**

    **IT IS SO ORDERED**

Date <u>January 26, 2015</u>                          <u>s/Sandra S. Beckwith</u>
                                                              Sandra S. Beckwith
                                                 Senior United States District Judge